IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: Finova Group et al

| | | |
|---|---|---|
| Finova Group Inc. and Finova Capital Corporation, | ) ) ) | Civil Action No. 07-487 (JJF) |
| Appellants | ) ) ) | |
| v. | ) ) | |
| Official Committee of Equity Securities Holders, | ) ) ) | Bankruptcy Case No. 01-698 AP 07-74 |
| Appellee. | | |

## MOTION TO DISMISS APPEAL

William D. Sullivan (No. 2820)
WILLIAM D. SULLIVAN, LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
email: bill@williamdsullivanllc.com

Mark D. Silverschotz, Esq.
James M. Andriola, Esq.
Han J. Ahn, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
email: jandriola@andersonkill.com

Attorneys for Appellee, the Official
Committee of Equity Security Holders

September 25, 2007

NYDOCS1-869845.1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

THE NATURE AND STAGE OF THE PROCEEDINGS .................................................. 1

SUMMARY OF THE ARGUMENT .................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT

THIS COURT SHOULD DISMISS ANY APPEAL OF: (i) THE APPOINTMENT ORDER; (ii) THE DECEMBER 30, 2005 FEE CAP ORDER; AND (iii) THE FEBRUARY 6, 2007 FEE CAP ORDER ............................................................................. 7

A. THE APPEAL OF THE APPOINTMENT ORDER IS UNTIMELY ......................... 8

B. THE APPEALS OF THE FEE CAP ORDERS ARE UNTIMELY ........................... 10

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                     **Page**

*In re Allegheny Health, Educ. & Research Found.*,
181 F. App'x 289, 291 (3d Cir. 2006) ..................................................................................8

*Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC*,
302 F. Supp. 2d 329 (D. Del. 2004)......................................................................................9

*In re Amatex*,
755 F.2d 1034, 1040 (3d Cir. 1985).....................................................................................10

*Amer Metrocomm Corp.*,
196 F. App'x 86, 87 (3d Cir. 2006) ................................................................................10, 11

*In re Armstrong World Indus., Inc.*,
No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005).....................................2, 8

*In re Genesis Health Ventures, Inc.*,
No. 00-2692 PJW, CIV A 06-397 JJF, 2007 WL 211209, at *1
(D. Del. Jan. 26, 2007) .........................................................................................................8

*Hylland v. Northwestern Corp. (In re Northwestern Corp.)*,
319 B.R. 68, 72 (D. Del. 2005)..............................................................................................2

*In re Johns-Manville*,
824 F.2d 176 (2d Cir. 1987)................................................................................................10

*In re Marin Motor Oil, Inc.*,
89 F.2d 445 (3d Cir. 1982), cert denied, 459 U.S. 1206....................................................10

*Metzker v. Int'l Paper Co.*,
825 F. Supp. 641, 645 (D. Del. 1993)...................................................................................9

*Novak v. Teitelbaum, Braverman & Borges, P.C. (In re Novak)*,
No. 03-5070, 2004 WL 2338126 (2d Cir. Oct. 15, 2004)...............................................2, 11

*In re NVF Co.*,
309 B.R. 698, 701 (Bankr. D. Del. 2004) ............................................................................9

*In re Sergi*,
233 B.R. 586, 589 (1st Cir. B.A.P. 1999) ............................................................................9

## TABLE OF AUTHORITIES
## (continued)

*In re Spillane*,
884 F.2d 642 (1st Cir. 1989) .......................................................................................... 3, 11

*In re Sugarhouse Realty, Inc.*,
192 B.R. 355, 362 (E.D. Pa. 1996) ...................................................................................... 9

*In re Universal Minerals, Inc.*,
755 F.2d 309, 311-12 (3d Cir. 2006) .................................................................................. 9

*In re Williams*,
357 B.R. 434 (6th Cir. B.A.P. 2007) ............................................................................. 2, 11

### STATUTES

Fed. R. Bankr. P. 2014 ................................................................................................... 5, 6

Fed. R. Bankr. P. 8002 ........................................................................................................ 8

Bankruptcy Rule 3022 ......................................................................................................... 3

## INTRODUCTION

The Cross-Appellee, the Official Committee of Equity Security Holders (the "Equity Committee"), on behalf of the shareholders (the "Equity Holders") of Finova Group, Inc., the corporate parent of Finova Capital Corporation (collectively, the "Debtors" or "Reorganized Debtors"), by and through its undersigned counsel, submits this motion to dismiss as untimely the Debtors' appeal from the following orders of the Bankruptcy Court described in the Notice of Cross-Appeal filed on July 16, 2007 (D.I. 1; Bankr. D.I. 231):[1]

> (i) the June 16, 2005 Order Directing the Office of the United States Trustee to Appoint an Official Committee of Equity Security Holders for a Limited Purpose and Granting Related Relief (the "Appointment Order") (Bankr. D.I. 48);
>
> (ii) the December 30, 2005 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93); and
>
> (iii) the February 6, 2007 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "February 6, 2007 Fee Cap Order") (Bankr. D.I. 205).

## THE NATURE AND STAGE OF THE PROCEEDINGS

On or about July 6, 2007, the Equity Committee filed its notice of appeal (Bankr. D.I. 226) of the Final Clarification Order (defined below) (Bankr. D.I. 220) and the First Clarification Order (defined below) (Bankr. D.I. 100). On or about July 16, 2007, the Debtors filed a notice of cross appeal addressing four separate orders (D.I. 1; Bankr. D.I. 231), three of which are the subject of the instant motion. The Equity Committee and the Debtors have filed their respective designations of the record and statements of issues on Appeal and Cross Appeal

---

[1] "Bankr. D.I." refers to the docket of the Bankruptcy Court in case no. 01-00698-PJW and "Bankr. (Case No. 697) D.I." refers to the docket of the Bankruptcy Court in case no. 01-00697-PJW.

(D.I. 2; Bankr. D.I. 233, 239, 242). The Equity Committee has previously filed a motion to convert a 90-day stay issued by the Bankruptcy Court on or about August 22, 2007 (Bankr. D.I. 247) into a stay pending final resolution of any appeal of the Final Clarification Order. (Bankr. D.I. 220).

## SUMMARY OF THE ARGUMENT

The Debtors' appeal of: (i) the Appointment Order; (ii) the December 30, 2005 Fee Cap Order; and (iii) the February 6, 2007 Fee Cap Order should be dismissed as untimely for the following reasons:

1. The Debtors failed to appeal the Appointment Order (entered on June 16, 2005), the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order within the ten-day appeal period permitted by Bankruptcy Rule 8002(a). Indeed, the notice of appeal for each order was not filed *until July 16, 2007*. In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to Appointment Order, the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order.

2. In the Third Circuit, an order of the Bankruptcy Court directing the U.S. Trustee to appoint an official committee of equity security holders is appealable immediately and as of a right. *See In re Zenith Electronics Corporation*, 329 F.3d 338 (3d Cir. 2003). Moreover, based on the Third Circuit's flexible, pragmatic approach to finality (s*ee In re Armstrong World Indus., Inc.*, No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005)) and the relevant factors articulated by this Court in *Hylland v. Northwestern Corp. (In re Northwestern Corp.)*, 319 B.R. 68, 72 (D. Del. 2005), the Appointment Order was a final and appealable order when entered on June 16, 2005.

3. The December 30, 2005 Fee Cap Order and the February 6, 2007 Fee Cap Order were, as orders regarding attorney compensation, each final and appealable orders when

entered. *See In re Williams*, 357 B.R. 434 (6th Cir. B.A.P. 2007); *Novak v. Teitelbaum, Braverman & Borges, P.C. (In re Novak)*, No. 03-5070, 2004 WL 2338126 (2d Cir. Oct. 15, 2004); and *In re Spillane*, 884 F.2d 642 (1st Cir. 1989).

## STATEMENT OF FACTS

### The Debtors' Bankruptcy Cases

On March 7, 2001, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By order of the Bankruptcy Court, the Debtors' Chapter 11 cases were jointly administered. On or about June 14, 2001, the Debtor (and related companies) filed their Third Amended and Restated Joint Plan of Reorganization (the "Plan") (Bankr. (Case No. 697) D.I. 553), which the Bankruptcy Court confirmed by order dated August 10, 2001. (Bankr. (Case No. 697) D.I. 100).

The Plan became effective on August 21, 2001 (the "Effective Date"). Pursuant to the Plan, the Court retained "exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 cases and the Plan . . . and . . . [t]o hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan." Plan at § 12.1 On each of November 18, 2003, December 29, 2004 and March 22, 2005, the Bankruptcy Court issued orders (together, the "Final Decrees") closing the cases of certain of the Reorganized Debtors. (Bankr. (Case No. 697) D.I. 1935, 2025, and Bankr. D.I. 12). Pursuant to each of the Final Decrees, the Bankruptcy Court retained jurisdiction to hear matters involving "the enforcement of the provisions of the Plan (including all related documents contemplated by the Plan) and the Confirmation Order, and the entry of orders in aid of confirmation and consummation of the Plan, including, but not limited to, orders resolving disputes regarding distributions under the Plan." *See, e.g.*, Final Decree and Order Closing Certain Chapter 11 Cases Pursuant to Section 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Rule

5009-1 and Granting Related Relief, dated December 29, 2004 (Bankr. (Case No. 697) D.I. 2025).

### The Debtors File The Clarification Motion And The Bankruptcy Court Issues The Appointment Order

On or about April 1, 2005, the Debtors filed the Motion of the Reorganized Debtor for an Order Under Bankruptcy Code Section 1411 Clarifying Provision of Confirmed Plan (the "Clarification Motion") (Bankr. D.I. 22). Subsequently, Eugene Linden, a former member of the Equity Committee, filed a Motion for an Order Which Recognizes the Continued Existence of the Equity Committee, or in the Alternative for the Reappointment of the Equity Committee for the Limited Purpose of Responding to the Debtors' Clarification Motion (the "Appointment Motion") (Bankr. D.I. 33).[2]

By Order dated June 16, 2005 (defined above as the "Appointment Order") (Bankr. D.I. 48), the Bankruptcy Court, over the objection of the Debtors (Bankr. D.I. 39) directed the Office of the United States Trustee to appoint the Equity Committee for the limited purpose of responding to the Clarification Motion. Pursuant to the Appointment Order, the Debtors were "responsible for the satisfaction of the allowed fees and expenses of the Equity Committee and its professionals…; provided, however, that in no event shall the [the Debtors'] liability exceed $100,000 absent further order of the [Bankruptcy] Court." Appointment Order at ¶ 4. The Debtors did not file a notice of appeal concerning the Appointment Order *until July 16, 2007.* (D.I. 1; Bankr. D.I. 231).

After the United States Trustee appointed the members of the Equity Committee on or about July 20, 2005, Anderson Kill and Buchanan Ingersoll[3] were retained to serve as the

---

[2] Rozann Chernov filed a joinder to the Appointment Motion (Bankr. D.I. 35).

[3] Buchanon Ingersoll was subsequently replaced by William D. Sullivan, LLC.

Equity Committee's legal professionals. The Equity Committee also retained Residual Based Finance Corp. ("RESIDCO") to serve as its financial and solvency advisors in connection with preparing a valuation analysis of the Debtors' airplane assets. Thereafter, the Equity Committee opposed the Clarification Motion on a number of grounds. (Bankr. D.I. 63).

<u>The Bankruptcy Court Issues The December 30, 2005 Fee Cap Order</u>

By Order dated August 26, 2005 (Bankr. D.I. 59), the Bankruptcy Court scheduled a hearing on the Clarification Motion for November 29, 2005. Prior to that hearing date, the Equity Committee filed an application with the Bankruptcy Court for an Order, Pursuant to Section 328 of the Bankruptcy Code and Fed. R. Bankr. P. 2014, Increasing the Cap on Fees and Expenses Which can be Incurred on Behalf of the Equity Committee (Bankr. D.I. 69). By Order dated December 30, 2005 (defined above as the "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93), the Bankruptcy Court over the objection of the Debtors (Bankr. D.I. 71), granted the Equity Committee's application and ordered that the aggregate limit placed on the amount of fees and expenses the Equity Committee's professionals were authorized to incur in responding to the Clarification Motion be increased to $200,000. By late January 2006, the Debtors had transmitted funds totaling $200,000 (the full amount permitted under the December 30, 2005 Fee Cap Order) to the Equity Committee's professionals for fees incurred by said professionals in responding to the Clarification Motion. The Debtors did not file a notice of appeal concerning the December 30, 2005 Fee Cap Order *until July 16, 2007*. (D.I. 1; Bankr. D.I. 231). In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to the December 30, 2005 Fee Cap Order.

On February 1, 2006, for the reasons set forth on the record at the hearing on November 29, 2005, and in a Supplemental Letter, the Bankruptcy Court ordered that "the Clarification Motion is hereby APPROVED to the extent that the Debtor is presently and will be

forever insolvent" (the "First Clarification Order") (Bankr. D.I. 100). First Clarification Order at p. 2. The First Clarification Order goes on to state that "[n]othing in this order shall be construed as a finding that the Debtors presently are or will forever be insolvent." *Id.*

### The Bankruptcy Court Issues The February 6, 2007 Fee Cap Order And The Final Clarification Order

On or about December 22, 2006, the Equity Committee filed an application with the Bankruptcy Court for an Order, Pursuant to Section 328 of the Bankruptcy Code and Fed. R. Bankr. P. 2014, Increasing the Cap on Fees and Expenses Which can be Incurred on Behalf of the Equity Committee (Bankr. D.I. 194). On or about January 8, 2007, the Debtors filed their Request for Entry of Final Order in Clarification Motion Contested Matter (the "Final Order Request") (Bankr. D.I. 196). By Order dated February 6, 2007 (defined above as the "February 6, 2007 Fee Cap Order") (Bankr. D.I. 205), the Bankruptcy Court over the objection of the Debtors (Bankr. D.I. 199), granted the Equity Committee's application and ordered that the aggregate limit placed on the amount of fees and expenses the Equity Committee's professionals were authorized to incur in responding to the Clarification Motion be increased to $300,000 (with certain restrictions).[4] The Debtors did not file a notice of appeal concerning the February 6, 2007 Fee Cap Order *until July 16, 2007*. (D.I. 1; Bankr. D.I 231). In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to the February 6, 2007 Fee Cap Order.

On or about June 26, 2007, the Bankruptcy Court entered the Final Clarification Order, which finds that "the Debtors presently are and will be forever insolvent" and grants the

---

[4] The February 6, 2007 Fee Cap Order Equity Committee also permitted the Equity Committee to hire an additional financial consultant, Traxi, LLC.

Clarification Motion "in its entirety and on a Final basis." Final Clarification Order at p. 2 and p. 3 ¶ 1 (Bankr. D.I. 220).

### The Bankruptcy Court Issues The July 6, 2007 Fee Cap Order

By Order dated July 6, 2007 (the "July 6, 2007 Fee Cap Order") (Bankr. D.I. 225), the Bankruptcy Court over the objection of the Debtors (Bankr. D.I. 216), granted the Equity Committee's application and ordered that the aggregate limit placed on the amount of fees and expenses the Equity Committee's professionals were authorized to incur in responding to the Clarification Motion be increased to $388,000.

On July 16, 2007, the Debtors timely filed a notice of appeal concerning the July 6, 2007 Fee Cap Order, but also included in their notice: the Appointment Order, the December 30, 2005 Fee Cap Order, and the February 6, 2007 Fee Cap Order. As discussed below, the inclusion of the three prior orders was improper since the time in which to appeal said orders had long expired.

## ARGUMENT

### THIS COURT SHOULD DISMISS ANY APPEAL OF: (i) THE APPOINTMENT ORDER; (ii) THE DECEMBER 30, 2005 FEE CAP ORDER; AND (iii) THE FEBRUARY 6, 2007 FEE CAP ORDER

Federal Rule of Bankruptcy Procedure 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within ten days of the entry of the judgment, order, or decree appealed from." This ten-day time limit "has been strictly construed, requiring strict compliance with its terms. Nor can it be doubted that the rule is jurisdictional in effect.... Failure to file a timely notice of appeal thus deprives the district court of jurisdiction to review the bankruptcy court's order or judgment." *In re Universal Minerals, Inc.*, 755 F.2d 309, 311-12 (3d Cir.1985); *see also In re Allegheny Health, Educ. & Research Found.*, 181 F. App'x 289, 291 (3d Cir.

2006) (failure to file a notice of appeal creates a jurisdictional defect and bars the district court from appellate review.); *see also In re Genesis Health Ventures, Inc.*, No. 00-2692 PJW, CIV A 06-397 JJF, 2007 WL 211209, at *1 (D. Del. Jan. 26, 2007) ("the ten-day mandate of Rule 8002 is jurisdictional, and the Court has no authority to waive this time limit.").

### A. The Appeal Of The Appointment Order Is Untimely

The Bankruptcy Court entered the Appointment Order from which the Debtors are attempting to appeal on June 16, 2005. The Debtors did not file their notice of appeal until July 16, 2007, over 2 years after the entry of the Appointment Order. This is clearly far outside the ten day limit of Bankruptcy Rule 8002(a). In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to the Appointment Order.

In the Third Circuit, an order of the Bankruptcy Court directing the U.S. Trustee to appoint an official committee of equity security holders is appealable immediately and as of a right. *See In re Zenith Electronics Corporation*, 329 F.3d 338 (3d Cir. 2003). While the court in *In re Zenith* was not required to address the issue head-on, a review of the facts set forth in the Third Circuit's decision, as well as the underlying district court decision (*In re Zenith Electronics Corporation*, 2002 WL 226242 (D. Del. 2002)), reveals the following: (i) on August 23, 1999, the Debtor filed its voluntary petition; (ii) on August 27, 1999, the Bankruptcy Court issued an order directing the U.S. Trustee to appoint an official committee of equity security holders; (iii) on August 31, 1999 (months before the plan of reorganization was confirmed by the Bankruptcy Court), the U.S. Trustee filed a notice of appeal with respect to the appointment order; (iv) the merits of the appeal were addressed by both the district court and the Third Circuit (which ended up reversing and remanding).[5]

---

[5] *See also In re Amatex*, 755 F.2d 1034 (3d Cir. 1985) and *In re Marin Motor Oil, Inc.*, 89 F.2d 445 (3d Cir. 1982), cert denied, 459 U.S. 1206 (1983). In both of these cases, the Third Circuit held that

NYDOCS1-869845.1         8

While not all circuits may follow this approach (*see e.g. In re Johns-Manville*, 824 F.2d 176 (2d Cir. 1987), it is well-known that the Third Circuit has a flexible, pragmatic approach to finality. *See In re Armstrong World Indus., Inc.*, No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005). The relevant factors articulated by this Court in *In re Northwestern Corp.*, 319 B.R. at 72, demonstrate the "final" nature of the Appointment Order. First, the Appointment Order left no additional work to be done by the Bankruptcy Court on the issue of whether or not to appoint the Equity Committee. Second, there could not possibly have been a need for further fact-finding on remand to the Bankruptcy Court on the issue of whether or not the Bankruptcy Court erred in appointing the Equity Committee for the purpose set forth in the Appointment Order.

Third, in objecting to the Equity Committee's appointment, the Debtors argued that "fundamentally, the Clarification Motion will not adversely affect the rights of equity holders because *applicable law* and the *terms of the Plan* prevent distributions to equity holders by this insolvent company." (Bankr. D.I. 39 at ¶ 1) (emphasis added). Thus, in their own words, the Debtors conceded that their appeal of the Appointment Order would have been based on purely legal issues (i.e., applicable law and the terms of the Plan).[6] Fourth, the Debtors also conceded that the Appointment Order had an impact on the Debtor's estate. In their objection to

---

    orders resulting from motions to intervene, which are similar in nature to the motion that lead to the Appointment Order in this case, are appealable.

[6] It is well-settled that a "confirmed plan of reorganization is a binding contract…[which] is subject to interpretation pursuant to relevant rules of contract interpretation and construction." *In re Sergi*, 233 B.R. 586, 589 (1st Cir. B.A.P. 1999) (citing *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D. Pa. 1996)); *see also In re NVF Co.*, 309 B.R. 698, 701 (Bankr. D. Del. 2004) (noting that a confirmed plan becomes a legally binding agreement). And, it is equally well-established that "the interpretation of contracts is a matter of law for the court to determine." *Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC*, 302 F. Supp. 2d 329 (D. Del. 2004); *see also Metzker v. Int'l Paper Co.*, 825 F. Supp. 641, 645 (D. Del. 1993) ("Interpretation of language in a contract…is treated as a question of law both in the trial court and on appeal." (internal quotation marks and citations omitted)).

the Bankruptcy Court, the Debtors argued that an equity committee should not be appointed to oppose the Clarification Motion "because doing so would waste assets of the Reorganized Debtors' estates." (Bankr. D.I. 39 at ¶ 1). Finally, it is obvious that the interests of judicial economy would have been served by having a determination back in 2005 as to whether the Bankruptcy Court was correct in issuing the Appointment Order, as opposed to waiting two years to make such an application. Were this Court to entertain an appeal of the Appointment Order at this time and reverse the Appointment Order as requested, such a decision would moot and/or render worthless over two years of efforts by the Equity Committee and its professionals.

For the foregoing reasons, the Debtors' appeal of the Appointment Order should be dismissed as untimely. *See Amer Metrocomm Corp.*, 196 F. App'x 86, 87 (3d Cir. 2006) (dismissing appeal as untimely where notice of appeal was filed five months after entry of bankruptcy court order and no extension was requested).

### B.     The Appeals Of The Fee Cap Orders Are Untimely

As with the Appointment Order, the Debtors failed to appeal either the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order within the ten-day appeal period permitted by Bankruptcy Rule 8002(a). Indeed, the notice of appeal for each order was not filed until July 16, 2007. In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to either the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order.

"The bankruptcy court's order regarding attorney compensation is a final [and therefore] appealable order." *In re Williams*, 357 B.R. 434 (6th Cir. BAP 2007); *see also Novak v. Teitelbaum, Braverman & Borges, P.C. (In re Novak)*, No. 03-5070, 2004 WL 2338126 (2d Cir. Oct. 15, 2004) (holding that joint debtor's were required to appeal bankruptcy court's order awarding attorney fees to appointed counsel within 10-days); *In re Spillane*, 884 F.2d 642 (1st

Cir. 1989) (holding that order awarding attorney fees was final because attorney for trustee was specifically appointed to handle appeal regarding transfer of venue).

Based on the foregoing, the Debtors' appeal of the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order should be dismissed as untimely. *See Amer Metrocomm Corp.*, 196 F. App'x 86, 87 (3d Cir. 2006).

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Equity Committee respectfully requests that this Court enter an order: (i) dismissing the Debtors' appeal of the Appointment Order, the December 30, 2005 Fee Cap Order and the February 6, 2007 Fee Cap Order as untimely; and (ii) granting such other and further relief as may be just and proper under the circumstances.

Dated: September 25, 2007
       Wilmington, Delaware

                          **WILLIAM D. SULLIVAN, LLC**

                          */s/ William D. Sullivan*
                          William D. Sullivan (No. 2820)
                          4 East 8th Street, Suite 400
                          Wilmington, DE 19801
                          Tel: (302) 428-8191
                          Fax: (302) 428-8195
                          email: bill@williamdsullivanllc.com

                              -- and --

                          **ANDERSON KILL & OLICK, P.C.**
                          Mark D. Silverschotz, Esq.
                          James Andriola, Esq.
                          1251 Avenue of the Americas
                          New York, NY 10020-1182
                          Tel: (212) 278-1000
                          Fax: (212) 278-1733

## CERTIFICATE OF SERVICE

  I, William D. Sullivan, certify that I am not less than 18 years of age, and that on this 25th day of September 2007, I caused a copy of the foregoing *Motion to Dismiss Appeal* to be served upon the parties listed below in the manner indicated.

| **HAND DELIVERY** | **FIRST CLASS MAIL** |
|---|---|
| Mark D. Collins | Jonathan M. Landers, Esq. |
| Richards Layton & Finger | Paul Guillotte, Esq. |
| One Rodney Square | Gibson, Dunn & Crutcher LLP |
| Wilmington, DE 19801 | 200 Park Avenue |
| | New York, NY 10166 |

  Under penalty of perjury, I hereby declare that the foregoing is true and correct.

*September 25, 2007*            */s/ William D. Sullivan*
Date                      William D. Sullivan